UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STEVEN L TIPPMANN, II,<br>　　Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 1:24-CV-491-JEM |
| | ) |
| FRANK BISIGNANO, Commissioner<br>of the Social Security Administration,<br>　　Defendant. | )<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Steven L. Tippmann, II, on November 20, 2024, and Plaintiff's Opening Brief [DE 16], filed on March 14, 2025. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On June 11, 2025, the Commissioner filed a response, and Plaintiff filed a reply on June 25, 2025. For the following reasons, the Court remands the Commissioner's decision.

**I.　　Background**

On September 10, 2021, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging that he became disabled on January 25, 2013, later amended to September 18, 2013. Both of his applications were denied initially. Upon reconsideration, the application for DIB was denied and his application for SSI was granted, finding him eligible for SSI as of September 2021. On September 5, 2023, Administrative Law Judge ("ALJ") Terry Miller held a video hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On October 27, 2023, the ALJ issued a partially favorable decision, finding that Plaintiff was not eligible for DIB but was entitled to SSI as of September 2021.

1

The ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since September 18, 2013, the alleged onset date.

3. The claimant has the following non-severe impairment: history of carcinoma in rectal polyp requiring surgical intervention in 2016 with no recurrence of cancer.

4. Since the alleged onset date of disability, September 18, 2013, the claimant has had the following sever impairments: bilateral sensorineural hearing loss; obstructive sleep apnea; obesity; anxiety/panic disorder, bipolar disorder/depression, and attention deficit hyperactivity disorder. Beginning on the established onset date of disability, September 10, 2021, the claimant has had the following severe impairments: bilateral sensorineural hearing loss; obstructive sleep apnea; obesity; anxiety/panic disorder, bipolar disorder/depression, attention deficit hyperactivity disorder; headaches/idiopathic intracranial hypertension; and bilateral papilledema.

5. Since September 18, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that prior to September 10, 2021, the date the claimant became disabled, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he needed to avoid concentrated exposure of loud noise, and hazards, including operational control of dangerous moving machinery, work at unprotected heights and work around slippery, uneven, and moving surfaces. Mentally, the claimant is limited to understanding, remembering, and carrying out simple routine repetitive tasks, consistent with unskilled work (defined as occupations that can be fully learned within a short period of time no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout an eight hour workday without frequent redirection to task; no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually; work that does not require satisfaction of strict or rigid production quotas, does not involve assembly-line pace work or hourly quota work, but can tolerate a flexible work pace with end of day goals; and, only superficial interactions with supervisors, coworkers, and the general public, defined as occasional and casual contact with no prolonged conversations and contact with supervisors is short allow the supervisors to give instructions.

7. After careful consideration of the entire record, the undersigned finds that since September 10, 2021, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: needed to avoid concentrated exposure of loud noise, and hazards, including operational control of dangerous moving machinery, work at unprotected heights and work around slippery, uneven, and moving surfaces. Mentally, the claimant is limited to understanding, remembering, and carrying out simple routine repetitive tasks, consistent with unskilled work (defined as occupations that can be fully learned within a short period of time no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout an eight hour workday without frequent redirection to task; no sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are workplace changes, they are introduced gradually; work that does not require satisfaction of strict or rigid production quotas, does not involve assembly-line pace work or hourly quota work, but can tolerate a flexible work pace with end of day goals; and, only superficial interactions with supervisors, coworkers, and the general public, defined as occasional and casual contact with no prolonged conversations and contact with supervisors is short allow [*sic*] the supervisors to give instructions. However due to increased mental problems, the claimant cannot regulate his emotions, control his behaviors, maintain well-being in a work setting and otherwise cannot manage his psychologically-based symptoms to perform regular and ongoing work activity on a full-time basis.

8. Since September 18, 2023, the claimant has been unable to perform any past relevant work.

9. Prior to the established disability onset date, the claimant was a younger individual age 18-49. The claimant's age category has not changed since the established disability onset date.

10. The claimant has at least a high school education.

11. Prior to September 10, 2021, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on September 10, 2021, the claimant has not been able to transfer job skills to other occupations.

12. Prior to September 10, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

13. Beginning on September 10, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

14. The claimant was not disabled prior to September 10, 2021, but became disabled on that date and has continued to be disabled through the date of this decision.

15. The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2018, the date last insured

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 13]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.   Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). "A reversal and remand may be required, however, if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). At a minimum, "[a]n ALJ must provide an adequate 'logical bridge' connecting the evidence and [the] conclusions, but an ALJ's opinion need not specifically address every single piece of evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

III.   Analysis

Plaintiff argues that the ALJ's symptom evaluation was patently wrong and that the ALJ failed to support his determination of Plaintiff's mental functioning with substantial evidence. The Court agrees with Plaintiff regarding the first of his arguments and remands on that basis.

When analyzing subjective symptoms, the ALJ is to first consider "whether the underlying impairment could reasonably be expected to produce the claimant's alleged symptoms" and then evaluate "the intensity and persistence of those symptoms to determine whether the claimant's ability to work is limited." *Swiecichowski v. Dudek*, 133 F.4th 751, 757 (7th Cir. 2025) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

> (i) [The individual's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . .;
> (v) Treatment, other than medication, . . . for relief of pain or other symptoms;
> (vi) Any measures . . . used to relieve . . . pain or other symptoms;
> (vii) Other factors concerning . . . functional limitations due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). The "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2.

An ALJ's decision denying benefits will be affirmed "so long as it is supported by substantial evidence, a threshold that is not high." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations and quotation marks omitted). Though ALJs do not need to discuss every piece of evidence, they are required to build a logical bridge spanning the evidence and conclusions "sufficient to allow [the reviewing court] to assess the validity of the ultimate

5

findings and afford meaningful review," and ALJs must not "ignore a line of evidence supporting a finding of disability." *Id.*

Plaintiff recounted at multiple points in the record that his symptoms were cyclical. The ALJ did note "some cycling moods and some depression relapses," and then, "to accommodate fluctuating moods and anxiety, . . . [the ALJ] limited the claimant to simple work within a relatively static environment . . . and precluded work that involved strict or rigid production quotas." AR 21.

The evidence of record presents a far more robust picture of Plaintiff's bipolar cycles. Plaintiff's mother reported that, when Plaintiff is in the worst parts of the cycle, his sleep pattern is disturbed by too much or too little sleep, AR 347; he loses all motivation and has little to no energy, AR 348; has a harder time focusing, AR 350; and needs someone to accompany him when he goes places, AR 350. She also stated that, despite Plaintiff's many work attempts, he "always ended up cycling with bipolar & severe anxiety & quit or left his jobs." AR 347.

Plaintiff testified that he struggles with motivation and focus and that his depressive episodes involve symptoms such as crying spells, lack of motivation, lack of energy, and suicidal thoughts. AR 65-66. He also has social anxiety that makes grocery shopping difficult with symptoms such as a racing heart and shortness of breath. AR 67-68. Plaintiff struggles to finish tasks and struggles with coworkers, strangers, and anyone outside of his "circle." AR 68, 72. He skips days of attending to his personal hygiene and struggles "a lot" with household chores. AR 73. His sleep is erratic. AR 75. He does not handle changes to routine well and reacts with agitation and panic. AR 77.

The ALJ failed to reference either the Adult Function Report that Plaintiff completed or the Third-Party Function Report submitted by Plaintiff's mother. Of Plaintiff's hearing testimony, the ALJ only noted that Plaintiff has a social limitation demonstrated by Plaintiff's testimony of

6

difficulty in going to the grocery store and that Plaintiff testified to lacking motivation to complete a task assigned to him. AR 19, 22. The ALJ also reported Plaintiff's testimony regarding his headaches. AR 23.

Given the severity of symptoms reported by Plaintiff and his mother, most of which went unnoted by the ALJ, the Court is unable to assess the validity of the ultimate findings and afford meaningful review to the ALJ's evaluation of Plaintiff's subjective symptoms. The logical bridge between the cycling moods and the conclusion that they are accommodated by simple work, a static environment, and no strict or rigid production quotas is missing. Remand is required for a new evaluation of Plaintiff's subjective symptoms.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 5th day of November, 2025.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record